(C. D. 344)

CONSOLIDATED PRODUCE CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 3, 1940)

*Harper & Harper* (*Abraham Gottfried* and *Walter I. Carpeneti* of counsel) for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*Richard E. FitzGibbon* and *Richard H. Welsh*, special attorneys), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges

CLINE, Judge: This is a suit against the United States, arising at the port of Los Angeles, in which the plaintiff seeks to recover duties assessed at the rate of 3 cents per pound under paragraph 772 of the Tariff Act of 1930 on certain tomatoes which are claimed to have been condemned by the board of health and destroyed within 10 days after landing. The plaintiff claims that allowance should have been made by virtue of the provisions of section 506 (2) of the Tariff Act of 1930.

This case is before the court on rehearing. It was decided in *Consolidated Produce Co. et al.* v. *United States*, T. D. 47971, adversely to the plaintiff's contention, but a timely application for rehearing was filed and granted and additional evidence was submitted at the trial on rehearing.

At the original trial the plaintiff called Mr. Ernest A. Morey, superintendent of the importing firm, who testified that he sold a portion of the merchandise in the original packages and that he supplied the purchaser with the lot number and the entry number of the shipment, which information he obtained from his customhouse broker.

The next witness called by the plaintiff was Mr. N. Ito who testified that immediately after March 6, 1933, which is the date of entry of the merchandise in this case, he received a shipment of tomatoes from the Consolidated Produce Co. and he received information from that firm as to the dutiable entry number and the lot number; that he kept the shipment on his premises separate from other merchandise; that a portion of the tomatoes was condemned by the health department; that he received a slip from the health department notifying him of the condemnation of 972 pounds of tomatoes out of that shipment; that at his direction his boy wrote on the back of the slip, immediately after it was received by him, the entry number and the lot number. This certificate of the board of health, and the importer's notice to the collector showing that tomatoes from the entry involved had been condemned on the premises of the Sun Produce Co., were offered in evidence, but, on objection by counsel for the defendant, the documents were not received. They were marked "Exhibit 1 for Identification." On the rehearing the same documents were again moved in evidence, and, on objection by counsel for the defendant, the motion was taken under advisement. The objection is overruled and exception granted counsel for the defendant. The papers are admissible for the purpose of showing a compliance with the conditions imposed by section 506 (2) and article 806 of the Customs Regulations of 1931. The documents are received in evidence and will be marked "Collective Exhibit 1." It appears therefrom that a notice of condemnation by the department of health was filed with the collector within 5 days after condemnation and that the tomatoes were condemned within 10 days after the date of entry.

At the rehearing the plaintiff introduced as additional evidence the testimony of three witnesses, Mr. Frank W. Schoeppe, a liquidator who had charge of the vegetable importations during the importing season of 1933, Mr. Ernest S. Glazer, who was the inspector in charge during that period, and Mr. Samuel C. Wilson, who inspected the decayed tomatoes and weighed them at the place of business of the Sun Produce Co.

Mr. Schoeppe testified that the shipment was landed on March 5, 1933, and that he disallowed the claim on 972 pounds of tomatoes covered by the condemnation certificate in Exhibit 1; that, after he received the notice of condemnation filed by the importer, he issued a form letter which directs that two inspectors investigate and make a report as to the identity and quantity of merchandise condemned.

The form letter referred to by the witness was found among the papers in the case and marked "Exhibit 2 for Identification" but it was not moved in evidence.

The witness testified further that in pursuance to the directions in the letter, "Exhibit 2 for Identification," he received a report signed by two inspectors in writing on the bottom of the letter he issued; that he did not know what investigation the inspectors made but accepted the inspectors' report and liquidated the entry making no allowance for the condemned merchandise.

The plaintiff offered some mimeographed letters directed by the collector of customs to customs brokers and others concerned and a copy of a typewritten letter addressed to the collector of customs by the Acting Commissioner of Customs, which are the same documents which were moved in evidence in a former case (*Farmers Produce Co. et al.* v. *United States*, T. D. 49495). Without objection they were received in evidence and marked "Collective Exhibit 3." Counsel for the defendant stated on the record:

\* \* \* and the Government is not contending and will not, and I as the Government attorney will not contend that these are mandatory regulations at all. They are not issued in furtherance of any direction by the Secretary of the Treasury at all.

The witness testified further that the notice of condemnation (Exhibit 1) was received by him on March 17, 1933, and that he referred the papers to the inspectors on April 3, 1933, with the request to investigate and report, and that the inspectors reported subsequently to that time; that the certificate of condemnation by the department of health, referred to by the witnesses as "tickets" or "slips," was considered by him as a notice of condemnation. His attention was directed to the statements on the back of the certificate of the department of health in Exhibit 1, reading "Quantity O K, S. C. Wilson," and he stated that the notation informed him that the condemned tomatoes had been inspected so it was not necessary to refer the notice to the inspectors immediately. His attention was directed also to the statement on the same document reading "3/16 We certify that the above information is true & correct. Consolidated Produce Co., Ltd., E. A. Morey," the "above information" evidently referring to a statement signed by the Sun Produce Co., indicating that out of 674 lugs of tomatoes from entry 5890, lot

number 1094, 972 pounds were dumped. The witness testified that he paid no attention to that certificate and did not make any attempt to corroborate the statement. The witness's attention was called to the notation "No notice of sale" on the duplicate or pink certificate of the department of health in Exhibit 1 and he stated it was inspector Wilson's notation and that it formed the basis for the inspectors' report. He testified that the pink copy was filed by the inspector when he made his report. The witness testified further that he never notified the importer that he was dissatisfied with the proof of condemnation prior to liquidation and that all he was interested in was the inspectors' report regarding the quantity and identity of the condemned tomatoes.

Mr. Glazer testified that he did not inspect the merchandise covered by the condemnation certificate in Exhibit 1; that he had charge of detailing inspectors for investigation of condemned goods and in this instance he designated inspector Wilson and himself; that one inspector had the detail of covering the markets and checking up the damage; that the inspector's routine was to visit the premises of various importers and spend as much time as he thought necessary to determine exactly what was going on. The witness testified further that when he signed the inspectors' report in Exhibit 2 for Identification he had a conference with inspector Wilson and he had before him the entry and all of the papers in the case and an examination of the papers indicated that the importer was claiming an allowance for decay on some six hundred more lugs of tomatoes than were covered by the entry and he decided that he could not identify the condemned merchandise with the importation. On cross-examination the witness stated that all the documents which were marked "Collective Exhibit 4 for Identification" were before him at the time he signed the inspector's report on Exhibit 2 for Identification.

Counsel for the defendant offered in evidence the file of documents marked "Collective Exhibit 4 for Identification," and, upon objection by counsel for the plaintiff, the admission of the exhibit was taken under advisement. We have examined all the documents and they appear to relate to portions of the shipment upon which the collector allowed the importer's claim. However, they are documents considered by the inspectors in making their report and are admissible. The objection is overruled with exception granted counsel for the plaintiff. The papers will be marked in evidence as "Collective Exhibit 4."

On redirect examination the witness was asked if he could tell if all of the condemned tomatoes were of the first sorting or whether some of the condemned tomatoes were from a second or third sorting of some of the lugs. The witness replied that the importer's notation

on the back of the condemnation tickets would indicate whether the sorting was the first or the second. Upon examining the papers in Exhibit 4, the witness said:

A. Well, we found out that there were some instances in this case where he didn't say whether he sorted them once or twice, and in others where he said it was the first sorting.

We have examined the department of health condemnation tickets in Exhibit 4 and find that in every instance the words "1st sorting" or "First sorting," with the number of lugs sorted, appear on the back of the certificates.

Witness Wilson testified that on May 15, 1933, he inspected the tomatoes covered by the condemnation ticket in Exhibit 1 and that they were inspected by no other inspector; that he wrote on the back of the condemnation ticket on white paper the words "3/15 quantity OK, S. C. Wilson;" that he did not see the condemned tomatoes after that time. On cross-examination the witness testified that subsequently he made an investigation, together with Mr. Glazer, and that the investigation consisted of an examination of all of the documents which had been filed by the importer on which he was claiming refunds for damaged tomatoes imported under the particular entry under consideration; that he had before him the documents contained in Exhibit 1 and Collective Exhibit 4; that he did not make a second inspection of the condemned tomatoes because they were removed from the importer's premises under his supervision and placed in garbage cans during his original inspection and the garbage cans were collected daily by the city garbage wagons.

Counsel for defendant called Mr. Schoeppe who testified that the documents in Collective Exhibit 4 were received by him at the customhouse and he turned them over to Mr. Glazer with his letter of April 3 by which investigation was requested.

Although the collector's report indicates that the dumpage could not be connected with the importation because the original importer resold the tomatoes and there was "no advice of sale received" and the back of the pink or duplicate condemnation certificate in Exhibit 1 contains a notation "no notice of sale," we find in Collective Exhibit 4 two letters addressed to the collector by the importer's customs broker notifying the collector of sales of tomatoes covered by the entry to the Sun Produce Co. and to Morris Trubin Co. These letters bear dating stamps showing that they were received in the customhouse on March 7 and March 8, 1933, which is prior to the date when the dumpage in this case was condemned by the board of health, which was on March 15, 1933.

It is shown by the testimony, however, that the customs officers considered another reason for refusing to identify the merchandise,

that is, the importer claimed refund for dumpage sorted from more packages of tomatoes than were received in the shipment. The record seems to verify this contention, for, by adding together the number of packages enumerated on the backs of the condemnation certificates in Collective Exhibit 1 (which cover condemnations upon which the plaintiff claims relief in this case) and Collective Exhibit 4 (which contains condemnation certificates which were allowed by the collector), it appears that the condemned tomatoes were sorted from 3,304 packages of tomatoes, whereas the entry shows that there were only 2,689 packages in the shipment. The plaintiff did not call any witnesses to explain this apparent discrepancy although opportunity was given the importer to submit all available evidence.

The plaintiff urges that it is entitled to refund of duty on the tomatoes condemned because he complied with the provisions of the law in that condemnation of the rotten tomatoes occurred within 10 days after the landing of the shipment and notices of the condemnations were filed with the collector within 5 days thereafter. While it is true that such procedure is provided in section 506 (2) of the Tariff Act of 1930, the law provides also that allowance shall be made in the estimation and the liquidation of duties under regulations to be prescribed by the Secretary of the Treasury.

SEC. 506. ALLOWANCE FOR ABANDONMENT AND DAMAGE.

Allowance shall be made in the estimation and liquidation of duties under regulations prescribed by the Secretary of the Treasury in the following cases:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(2) PERISHABLE MERCHANDISE, CONDEMNED.—Where fruit or other perishable merchandise has been condemned at the port of entry, within ten days after landing, by the health officers or other legally constituted authorities, and the consignee, within five days after such condemnation, files with the collector written notice thereof, an invoiced description and the location thereof, and the name of the vessel or vehicle in which imported.

Article 807 (b) of the Customs Regulations of 1931, which were in force at the time of the importation herein, provides:

(b) If it appears from the evidence submitted by the importer and the report of the investigating officers that the merchandise was condemned within 10 days after the landing thereof, and a timely notice was filed, allowance for the articles so condemned may be made in the liquidation of the entry.

The regulation above quoted indicates that evidence submitted by the importer shall be considered in determining whether or not the merchandise was condemned within 10 days after landing and timely notice thereof was filed with the collector. Although it is not disputed that a condemnation of damaged tomatoes occurred within 10 days after the landing of the shipment covered by the protest in this case and a timely notice thereof was filed in the customhouse, and although a witness for the plaintiff testified that the condemned merchandise

came out of the shipment, the testimony submitted by the defendant is sufficient to raise a question as to whether the plaintiff's testimony is correct. The plaintiff failed to meet this testimony or to explain the apparent discrepancy in the statements on the documents filed in the customhouse by the importer. We are of opinion that the collector acted lawfully in denying the plaintiff's claim for refund in duty of the 972 pounds of damaged tomatoes condemned on the premises of the importer's customer—Sun Produce Co. The collector may not have stated in his report the correct reason for denying the importer's claim, but the evidence submitted by the plaintiff before the court is not sufficient to establish that the condemned merchandise was a part of the shipment herein involved. The protest is overruled. Judgment will be entered in favor of the defendant.